WALTER BOVAIRD V. ELLA K. BOVAIRD.

No. 15,586.   (96 Pac. 666.)

SYLLABUS BY THE COURT.

1. DIVORCE—*Plaintiff Guilty of Adultery—Refusal of Defendant to Condone.*  A husband who deserted his wife and afterward held adulterous relations with a number of women is not in a position to insist on a divorce from his wife because she declines to resume marital relations with him upon request.

2. ———— *Abandonment.*  While the law encourages reconciliation and the resumption of marital relations between estranged spouses, it does not enforce condonation nor require that a wife who declines to live with a husband who has been guilty of adultery and other matrimonial offenses shall herself be deemed guilty of desertion.

Error from Montgomery district court; THOMAS J. FLANNELLY, judge.   Opinion filed June 6, 1908.   Affirmed.

*F. J. Fritch,* and *John Bertenshaw,* for plaintiff in error.

*W. N. Banks,* for defendant in error.

The opinion of the court was delivered by

JOHNSTON, C. J.: In this action Walter Bovaird petioned for a divorce from his wife on the ground of abandonment.   She answered denying that she had ever deserted or abandoned her husband, and alleging that he had abandoned her and had instituted three different actions against her for divorce, two of which were tried and decided adversely to him and the other was dismissed.   She also alleged that he had been guilty of adultery with a number of women and had been living a dissolute life, and her prayer was that a divorce be refused and that she be granted alimony.

At the trial the court made special findings to the effect that the parties were married in 1888; that in 1897 the plaintiff abandoned his wife, without cause or

consent, and in the same year attempted to obtain a di-
vorce from her in Pennsylvania, on the grounds of
abandonment and cruelty, but that a trial there re-
sulted in a decision against him; that he then went to
South Dakota and began another action for divorce,
because of alleged abandonment, but, although she ap-
peared and answered, the cause was dismissed; that
two years later he commenced another action in South
Dakota, alleging a later desertion on her part because
he had notified her to come to that state and live with
him, but it was found that the offer was not made in
good faith and only for the purpose of laying a ground
upon which he might obtain a divorce, and it was then
decided that she was not guilty of desertion; that he
came to Independence, Kan., in 1902, where he has,
since resided and is held in good repute; that in 1904
he wrote to defendant asking her to come to Kansas
and live with him, admitting his misconduct and sug-
gesting that she, too, was not without fault, and that
each should forgive and forget the past. It was also
found that he had provided a home for her in Kansas,
and that the offer was made by him in good faith, and
was again renewed when the defendant came to at-
tend trial, but that she did not accept his proposal to
resume marital relations with him. It was found that
he had contributed nothing toward her support since he
had deserted her in 1897, but that she had lived with
a brother and with his assistance had supported her-
self. It was further found that he admits committing
adultery since he separated from his wife, and that
she has not lived or cohabited with him since 1897 and
has in no manner condoned or forgiven him. The court
found that she had not abandoned him, and that the
ground alleged for divorce was not sustained.

Notwithstanding the recited facts, the plaintiff is
here insisting that he is entitled to a decree of divorce.
Abandonment was the only ground upon which a di-
vorce was asked, and the court found upon unquestioned

evidence that she was not guilty of that charge. On the contrary it appeared and was found that he had abandoned her without cause and against her will, and has since been guilty of adultery and gross neglect of duty. Has one guilty of these violations of the marital relation against a spouse found to be without fault any cause to complain that his petition was refused? The statute vests the court with discretion to refuse a divorce where the plaintiff, as well as the defendant, is in the wrong. (Civ. Code, § 643.) Therefore can there be any doubt of the propriety of refusing a divorce to a plaintiff who admits that his conduct was reprehensible and who is found to be guilty of the gravest and grossest violation of the marital relation? Divorce is a remedy available to an innocent party, and one who has deserted his wife and held adulterous relations with a number of women is not in a position to ask for a divorce. (*Burke v. Burke,* 44 Kan. 307, 24 Pac. 466, 21 Am. St. Rep. 283.) In the recent case of *Day v. Day,* 71 Kan. 385, 80 Pac. 974, it was said that the matrimonial offense of a plaintiff would bar his claim for a legal separation. It was further said:

"It is no more than the application of the equitable rule that one who invokes the aid of a court must come into it with a clear conscience and clean hands. Divorce is a remedy for the innocent and injured, and the plaintiff that has himself broken the marriage contract can not well ask to be relieved from its obligations because his spouse may also have broken it." (Page 388.)

Much less may an offending plaintiff ask for the severance of the matrimonial bonds where the spouse is free from blame. There is a strong statement of the same rule in volume 2 of the fifth edition of Bishop on Marriage, section 87, in this language:

"The matrimonial relation is one of mutual dependence and duty; and it would seem to be within all legal analogies, and all sound canons of morality, to refuse to hear a plaintiff complaining of the defendant's infraction of one of the links of this common chain, when

he had equally broken another. Moreover, the law is for the assistance of those who obey it, not those who violate it; and, when two parties are both in the same wrong, the court helps neither."

But plaintiff calls attention to the fact that since coming to Kansas he has apologized for his wrong, has requested his wife to resume marital relations, has offered to provide her with a home, and. that these tenders have all been made in good faith. At an earlier time he proposed reconciliation and offered her a home in South Dakota, but the court that tried the case begun in that state found that the offer was not *bona fide* and was only made for the purpose of laying the ground for an action of divorce. Is it any wonder that she distrusts his motives in the later offer or that she should be slow to accept him as a repentant and reformed spouse? It is noticeable, too, that he couples with his confession and proposal the statement that his wife was in fault. Aside from his previous duplicity and deceit there are the admitted acts of adultery to make her hesitate, and it is not easy to overlook or condone matrimonial offenses of that gravity. They were not only wrongs against her, but were wrongs against society, and public opinion does not readily sanction the conduct of a spouse who condones adultery in the other. But is she compelled to condone his wrongs when her husband confesses his guilt and informs her that he is ready "to forget and forgive the past?" Courts are inclined to encourage reconciliation and the resumption of the marital relation between spouses who are estranged; but here plaintiff is claiming the benefit of an offer of reconciliation made, it. must be assumed, in good faith, and is using it as a basis for a charge of desertion against his wife in order to obtain a complete severance of the marriage bonds. Seven years before that time he had broken his marriage vows in a number of ways, but she had never condoned his misconduct; and must it be said that she

is compelled to condone his matrimonial offenses, however flagrant, or be chargeable with desertion?

According to the ecclesiastical law one who committed adultery was not entitled to any relief, and while the modern law is not so strict or severe it does not enforce condonation upon a faithful wife who has been loaded with shame and sorrow resulting from the infidelity and gross misconduct of her husband. Even in the case of the less serious ground of desertion the rule is that if the deserter desires to put his wife in fault by an offer of reconciliation it must be made before the other party acquires the right to a divorce against him. In *Benkert v. Benkert*, 32 Cal. 467, it was held that repentance does not obliterate the matrimonial offense, and that, where the offending party comes with an offer of reconciliation after the time has expired and the right of action has fully accrued for desertion, the injured party is not obliged to accept such an offer, and, also, that the offer is not binding upon one who makes it unless it is accepted and acted upon. It has been said:

"The offer to return is ineffectual if made after the statutory period has elapsed. However wilful the leaving may have been, or however destitute of reasonable cause, it is not a ground of divorce unless the separation has continued for the statutory period. The 'door of repentance and return' must be kept open during that period. But after the statutory time has elapsed the injured party has a cause for divorce. If such party refuses to renew cohabitation it is not desertion. For to renew cohabitation is to condone the offense, and the law does not enforce condonation. The refusal of an offer to return will not bar the divorce to which the party is already entitled." (1 Nelson, Div. & Sep., § 75.)

Reconciliation may, in the course of time, follow reformation, but the court will not hold that because the defendant did not accept the plaintiff's proposal she is to be treated as a deserter, nor that he be awarded a divorce on the theory that she is the party

in the wrong. The theory of the law is rather that a divorce shall not be granted to one who is guilty of matrimonial misconduct. .

The judgment of the district court is affirmed.