CATINCHI, DEMANDANTE Y APELADA, *v.* CATINCHI, DEMANDADO Y APELANTE.

APELACIÓN procedente de la Corte de Distrito de Mayagüez en pleito de divorcio.

No. 1943.—Resuelto en mayo 29, 1919.

DIVORCIO POR CAUSA DE ABANDONO—EVIDENCIA QUE TIENDE A PROBAR EL ABANDONO.—El hecho de que un marido hubiera cumplido con sus deberes civiles para con su esposa y atendido a sus necesidades no impide que trate ella de obtener un divorcio por causa de abandono. Sin embargo, el dejar de atender a sus necesidades es una de las circunstancias que tiende a probar el abandono.

INTENCIÓN DE ABANDONAR.—El estatuto establece como causa de divorcio el abandono por más de un año y aunque debe coexistir la intención de abandonar, dicha intención generalmente puede inferirse del abandono mismo.

PRUEBA DEL ABANDONO—RECONCILIACIÓN INTENTADA.—La tentativa de reconciliación por parte del cónyuge inocente frecuentemente se considera innecesaria excepto cuando no es evidente la intención de abandonar. Las cortes generalmente no consideran como gran deber por parte de la esposa inocente el procurar la reconciliación cuando ha sido abandonada por su esposo. El deber del marido de intentar la reconciliación es mucho más positivo puesto que de él es siempre de quien depende la iniciativa de mantener un hogar. Cuando el marido ha abandonado a su esposa sin existir un verdadero motivo, si desea impedir que corra el término estatutorio tiene él claramente el deber de tratar de efectuar una verdadera reconciliación antes de que expire dicho término. Tal oferta debe ser sincera y sin condiciones tales que ninguna mujer que se respete a sí misma y que no sea culpable pueda esperarse que la acepte. Mandar una carta a una hermana de la esposa no es realizar la oferta de reasumir la vida marital.

Los hechos están expresados en la opinión.

Abogados de la apelada: *Sres. A. Nazario Lugo y Pascasio Fajardo.*

Abogado del apelante: *Sr. Andrés Mena.*

EL JUEZ ASOCIADO SR. WOLF, emitió la opinión del tribunal.

Pedro P. Catinchi es un fotógrafo que se estableció en Mayagüez donde contrajo matrimonio con la demandante María Vázquez. Mientras vivía allí hizo con motivo de su negocio varios viajes de larga duración a distintas partes de la isla o a Santo Domingo durante los cuales la demandante trasladaba su residencia a casa de sus padres. Uno de estos viajes duró seis meses. Las partes tienen una hija llamada Cuba que tenía unos siete años de edad cuando tuvo lugar el juicio de este caso. Existe alguna prueba tendente a mostrar que a la fecha del abandono de que se queja la demandante en este caso dicha demandante sabía que su esposo iba a efectuar uno de sus acostumbrados viajes; pero el hecho de que ella no pensaba ir a la casa de sus padres se demuestra por la ingeniosa queja de su marido al manifestar en su declaración que ella dejó su casa y se fué a la de sus padres sin él saberlo o consentirlo. El día 2 de agosto de 1916 o el anterior, los esposos tuvieron un disgusto de palabras acerca del cual declararon varios testigos y cuya naturaleza no se revela, pero no existe nada en los autos excepto en una carta del marido que indique que la esposa fuera culpable en absoluto y especialmente que la falta sea de tal naturaleza que justifique un abandono. Dice el esposo que estaba ligeramente disgustado con su esposa.

El día 2 de agosto de 1916, sin decir adiós a la demandante él la dejó y con excepción de la carta que escribió en julio 31 de 1917, no hizo esfuerzo alguno por comunicarse con ella ni le dijo que le siguiera. El remitió a su hija algunos regalitos cuyo importe asciende a $12 y ésta le escribió. También mandó poco tiempo después del día 2 de agosto de 1916, $64 a la cocinera, pero consta que esta suma era para atender a ciertas deudas y a los salarios de aquélla, deudas que fueron contraídas con anterioridad a

esa fecha. Con excepción de estas cuestiones que no son pertinentes no contribuyó él en modo alguno al sostenimiento de su esposa después del día 2 de agosto de 1916. En su declaración trata de disculpar su negligencia diciendo que le dejó a su señora las prendas de ella y muebles de la casa y al parecer dicho demandado esperaba que ella empeñara estos objetos en caso necesario.

El día 2 de agosto de 1916 un hermano de su esposa le acompañó a la estación a quien el demandado dijo que se iba para no volver, manifestación que fué ratificada por el propio demandado en la silla testifical y según aparece de la prueba resulta razonablemente claro que esa manifestación fué comunicada a la esposa puesto que ella declaró acerca de esta conversación con su hermano. Es una deducción lógica de la declaración del marido así como de otras circunstancias que él hizo que llegara a conocimiento de su esposa su intención de abandonarla el día 2 de agosto de 1916, si no antes de esa fecha. Hacia fines de mes dejó ella la casa y se fué a vivir a la de sus padres.

Durante la separación, al tratar el padre de la demandante de efectuar una reconciliación entre las partes, se vió con el demandado en Caguas. No se mencionó la fecha pero el testigo declaró que las relaciones entre las partes no habían cambiado. En esta conversación Catinchi dijo a Vázquez que era imposible una reconciliación; que no estaba dispuesto a vivir con la hija de Vázquez otra vez; que si ella venía a la casa de Catinchi, la recibiría pero ella tendría que vivir en su casa completamente desligada de él y con los recursos que él pudiera proporcionarle; que no haría vida marital con ella; que se avergonzaría de salir a la calle con ella y que ella viviría sin salir a la calle (*sic*); que sentía lo que ocurría pero no podía hacerse otra cosa; que todo su empeño era tener a su hija a su lado y dirigir la educación. El testigo expresó su creencia de que en estas condiciones era imposible una reconciliación.

Poco tiempo antes de transcurrir el año se enfermó la

esposa, fué al hospital donde sufrió una delicada operación de apendicitis. Su enfermedad fué comunicada al marido pero éste no se ocupó de otra cosa que lo que revela la carta de julio 31, 1917.

Esta carta no fué remitida directamente a la esposa sino a una hermana de la demandante. Dicha carta es como sigue:

"Caguas, julio 31 de 1917. Sra. María Vázquez de Catinchi, Mayagüez, P. R. Después de meditarlo mucho, he resuelto llamarla a mi hogar (que es el suyo) actualmente en Caguas, donde viviremos de acuerdo con mi posición económica, que no es muy desahogada, y de modo que no se repitan las desagradables escenas que constantemente han alterado la tranquilidad que debe reinar en todo hogar.

"No tengo que esforzarme en hacerle comprender que mi único deseo es tener a mi Cuba junto a mí y dirigirla en su educación. Sé que usted está enferma y no podrá usted contestarme en seguida, pero espero que me contestará tan pronto su estado de salud lo permita, a fin de tener tiempo de buscar casa más cómoda, ya que la que ocupo sólo tiene un cuarto en que dormimos Luis y yo estrechamente. Pepe."

Esta carta no fué recibida por la esposa hasta el día 8 o 9 de agosto de 1917. Ella contestó como sigue:

"Sr. don Pedro Catinchi, Caguas, P. R. Mi estado de· salud no me había permitido hasta hoy contestar su carta, la que me ha hecho meditar y pensar mucho, llegando a la conclusión de creer que su proposición, ni para Ud. ni para mí, ni para la niña es conveniente. Creo que lo pensado hasta hoy sobre el divorcio que usted deseó siempre es lo más práctico que debemos hacer.

"Espero que usted me contestará si es conforme en que presente mi demanda en los últimos días del corriente mes. María."

La anterior es la prueba presentada en el juicio sobre la cual no hubo discusión. Además la esposa prestó declaración tendente a mostrar que en los primeros días de la separación ella escribió a su marido pidiéndole que volviera, dirigiendo debidamente las cartas con la dirección de ella al dorso y que dichas cartas no fueron devueltas   Aunque

el marido negó haber recibido estas cartas el juez de la corte inferior en su opinión creyó lo referido por la esposa y ésta sería la presunción, de ser necesario, de la sentencia dictada a su favor.   Existen pequeñas circunstancias que tienden a corroborar la declaración de la esposa así como la actitud irreconciliable del marido cuando fué visitado por el padre de la demandante.   De igual modo hace referencia el demandado en su declaración a la devolución de un par de zapatos que envió a su hija y que fué devuelto por su esposa.   De todos modos él también sabía e hizo una protesta ingenua de haber dejado ella la casa, hecho que le fué comunicado a él.   Parece que lo mismo que llegaban a su poder las comunicaciones que tendían a perjudicar a la esposa podían llegar las cartas de ella.   Esta fué en sustancia toda la prueba y no vemos en ella nada de donde aparezca "el acendrado cariño" hacia su esposa de que se habla en la contestación.   La corte dictó sentencia a favor de la demandante.

No es necesario insistir indebidamente en el hecho de haber dejado el marido de atender a las necesidades de su esposa.   El hecho de que un marido hubiera cumplido con sus deberes civiles para con ella y atendido a sus necesidades no impide que trate ella de obtener un divorcio por causa de abandono.  4 R. C. L. 367.   Sin embargo, el dejar de atender a sus necesidades es una de las circunstancias que tiende a probar el abandono.

El estatuto establece como causa de divorcio el abandono por más de un año y aunque debe coexistir la intención de abandonar dicha intención generalmente puede inferirse del abandono.

Sin analizar más la prueba resultó claro que hasta el día 31 de julio de 1917, fecha de la carta del esposo existían todos los elementos necesarios para un divorcio.   El caso se distingue fácilmente del de *Jirot* v. *Crispín*, 23 D. P. R. 822, puesto que la intención de abandonar en esté caso era manifiesta en el momento del abandono.

De acuerdo con un estatuto semejante al nuestro en el cual aparece el abandono y la intención de abandonar, todo esfuerzo para una reconciliación por parte del esposo o esposa inocente frecuentemente se considera innecesario. *Lanier* v. *Lanier*, 5, Heisk 62, *Patterson* v. *Patterson*, 88 Pac. 196. Entonces el esfuerzo para una reconciliación solamente es necesario cuando tal intención no es cierta como cuando existía cierto espíritu de conformidad por parte de la persona inocente. *Hitchcock* v. *Hitchcock*, 15 App. D. C. 93.

También las cortes generalmente no consideran como gran deber por parte de la esposa inocente el procurar la reconciliación cuando ha sido abandonada por su esposo. *Wilson* v. *Wilson*, 57 A. 552; *Coe* v. *Coe*, 59 A. 1059; *Fielding* v. *Fielding*, 64 So. 546. 9 R. C. L. 371, 372.

El deber del marido es mucho más positivo puesto que de él es siempre de quien depende la iniciativa de mantener un hogar. *Wood* v. *Wood*, 53 A. 51; *Hill* v. *Hill*, 39 L. R. A. (N. S.) 117, y notas; 14 Cyc. 617. Y es tan imperativo y contínuo este deber que tiene que ser un caso muy fuerte para que pueda quedar relevado de la necesidad de efectuar una reconciliación. El mero hecho de que una esposa dejara la casa de su marido en un momento de coraje por sí sólo generalmente no daría al marido un fundamento para un divorcio. Además en el presente caso aunque no basamos principalmente nuestra decisión sobre ese punto la prueba tiende a mostrar que se hicieron esfuerzos para llegar a una reconciliación por parte de la esposa y los esfuerzos de su padre tal vez pueden ser considerados como los de ella.

Sin embargo, cuando el marido ha abandonado a su esposa sin existir un verdadero motivo, si desea impedir que corra el término estatutorio tiene él claramente el deber de tratar de efectuar una verdadera reconciliación antes de que expire el término estatutorio. *Benkert* v. *Benkert*, 32 Cal. 467; *Bovaird* v. *Bovaird*, 78 Kan. 315, 96 Pac. 666; *Creassy*

v. *Creassy,* 168 Mo. App. 68; *Stocking* v. *Stocking,* 76, Minn. 292, 79 N. W. 172, 668.

Tal oferta debe ser sincera y sin condiciones tales que ninguna mujer que se respete a sí misma y que no sea culpable pueda esperarse que la acepte. *Gordon* v. *Gordon,* (Pa.) 57 A. 525; *Andrade* v. *Andrade,* 128 Pac. 817. *Maloney* v. *Maloney,* 145 Pac. 631. 9 R. C. L. 373. 14 Cyc. 619. Véase también el caso de *Woolard* v. *Woolard,* 18 App. D. C. 326, en el que tal vez la esposa fué culpable en primer término.

Tiene asimismo que ser una oferta de continuar la vida marital. Algunas de las anteriores autoridades demuestran esto y también el caso de *Fraser* v. *Fraser,* L. R. A. 1917 F. 738.

De acuerdo con los hechos sometidos a nuestra consideración y siendo enteramente culpable el marido desde el punto de vista de la ley, su deber era ver que la oferta para la reconciliación fuera comunicada a la esposa dentro del término estatutorio. La carta, por el contrario, llegó a manos de ella el día 8 de agosto de 1917. El abandono tuvo lugar el día 2 de agosto de 1916. La carta fué escrita en julio 31, 1917 y llegó a poder de la hermana en agosto 2, 1917, muy dudosamente dentro del año. El recibo de dicha carta por la hermana no era lo mismo que recibirla la esposa. El demandado debió haber tenido cuidado de que la oferta de reconciliación llegara a poder de su propia esposa. Nos vemos obligados a declarar que no hubo interrupción del término por el mero hecho de escribirse la carta ni por haberla recibido su hermana.

Sin embargo, no es necesario fundar esta opinión en el solo motivo de haber llegado la carta demasiado tarde. En dicha carta no se cumplía ni con la condición de sinceridad que exige la ley ni era una oferta sincera de continuar la vida marital. Dada la anterior conversación con el padre no era una clara oferta para continuar viviendo con la es-

posa. El énfasis se marcó en la hija aun cuando considerásemos dicha carta aisladamente.

Según sus términos también tenía ella por objeto exigir a la esposa la promesa de que no se repetirían las escenas que según el marido habían dado lugar al abandono. Aun cuando el demandado sostiene en su defensa que no aceptó gustosamente los buenos servicios del padre pues todavía estaba irritado con su esposa, admite según parece, que no consideró el disgusto como serio. No debe entenderse que sostenemos o resolvemos que una carta deba ser escrupulosamente correcta o estar desprovista en absoluto de reproches, pero sí debe aparecer en ella el elemento de sinceridad y no debe estar redactada en forma tal que es casi seguro que ha de producir hostilidad. La cuidadosa omisión en siquiera decir en ella "Querida María", debe tenerse en cuenta, así como el no emplear ni siquiera una forma cortés en su conclusión. La carta envolvía una promesa por parte de la esposa de que las escenas desagradables no se repetirían sino un reconocimiento de que el abandono había sido motivado por ella. No existe nada en la teoría de que el ofrecimiento de buscar una casa tendía a mostrar sinceridad. En la carta tampoco se guarda consideración alguna a la esposa que está enferma en cama. Además del desaire envuelto al hacer referencia a la hija, no hay en dicha carta ofrecimiento alguno de venir a buscar a su esposa o de atender a sus gastos de viaje a Caguas. También llamaba mucho la atención que en dicha carta no se hacía ofrecimiento de enviar algo a la esposa para su sostenimiento después de los 364 días en que había dejado de atender a sus necesidades.

La sentencia apelada debe ser confirmada.

*Confirmada la sentencia apelada.*

Jueces concurrentes: Sres. Presidente Hernández y Asociados del Toro, Aldrey y Hutchison.