EN EL TRIBUNAL SUPREMO DE PUERTO RICO

**CARATULA ENMENDADA**

| | |
|---|---|
| ANGELO PARDO SANTOS Y OTROS <br>     Demandantes-apelados <br><br>             v. <br><br> SUCN. DE JORGE STELLA ROYO <br> ANTONIO CORDOVES INFANTE <br> EN SU CARACTER PERSONAL Y COMO ALBACEA <br> DE LA SUCN. <br><br>     Demandados – apelante el primero y <br> apelado el segunda | Apelación Civil <br><br> 98TSPR77 |

Número del Caso: AC-96-51

Abogados Parte apelante: Lic. Manuel Alvarado

Abogados Parte apelada: Lic. David Carrión Baralt
Lic. George E. Green Rodríguez

Abogados Parte Interventora:

Tribunal de Instancia: Superior, Sala de San Juan

Juez del Tribunal de Primera Instancia: Hon. Flavio Cumpiano

Tribunal de circuito de Apelaciones: Circuito Regional de San Juan

Panel integrado por su Presidente la Juez Fiol Matta, la Juez Rodríguez de Oronoz y el Juez Gierbolini

Juez Ponente: Hon. Gilberto Gierbolini

Fecha: 7/17/1998

Materia: Acción Civil

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

Angelo Pardo Santos y otros

    Demandantes-Apelados

      v.

Sucn. de Jorge Stella Royo        AC-96-51    Apelación

    Demandados-Apelantes

Antonio Cordoves Infante
En su carácter personal
Como Albacea de la Sucn.

    Demandado-Apelado

Opinión del Tribunal emitida por el Juez Presidente, señor Andréu García

San Juan, Puerto Rico, a 17 de junio de 1998

Nos corresponde revisar una sentencia del Tribunal de Circuito de Apelaciones que ordena al Tribunal de Primera Instancia, Sala Superior de San Juan, celebrar una vista para determinar si procede declarar la nulidad de la sentencia de divorcio de Isabel Santos Nazario y Jorge Stella Royo, decretada en 1959. Veamos los hechos.

## I.

El 18 de junio de 1992, el Ing. Angel Pardo Santos, junto a su esposa, Emma León de Pardo, y la sociedad legal de bienes gananciales compuesta por ambos, demandó a su medio hermano, Jorge Ignacio Stella Santos, los hijos de éste, Adrián Stella Arroyo, Jorge Luis Stella Arroyo, y a Antonio Cordovés Infante, albacea de la sucesión

de su padrastro, Don Jorge Stella Royo.[1]

En síntesis y en lo pertinente al dictamen del Tribunal del Circuito de Apelaciones que hoy revisamos, los demandantes alegaron que el ingeniero Pardo Santos es hijo de doña Isabel Santos Nazario y de su primer esposo, Angel Pardo. Indicaron que tras divorciarse de Angel Pardo, doña Isabel se casó con don Jorge Stella Royo, el 13 de marzo de 1938, constituyéndose una sociedad de bienes gananciales, y que la pareja procreó un solo hijo, el codemandado Jorge Ignacio Stella Santos.

Según las alegaciones de los demandantes, no fue hasta 1991, cuando falleció doña Isabel, que se le informó al ingeniero Pardo Santos que su madre y su padrastro se habían divorciado en el año 1959, liquidando la sociedad de bienes gananciales habida entre ellos, y que se casaron por segunda vez en el año 1961, tras haber otorgado capitulaciones matrimoniales.[2]

Sobre el divorcio de doña Isabel y de don Jorge, los demandantes alegaron que éstos nunca estuvieron separados, por lo cual el divorcio obtenido bajo la causal de abandono fue simulado, nulo e inoficioso. Como remedio, solicitaron que se anulara la sentencia de divorcio, dictada en el 1959. También solicitaron la nulidad de la liquidación de la sociedad de bienes gananciales, de las capitulaciones matrimoniales otorgadas por doña Isabel y don Jorge en el año 1961, del subsiguiente matrimonio habido entre ellos, y de todos los actos posteriores a esa fecha, de manera que lo relativo a los bienes adquiridos por doña Isabel y don Jorge durante su segundo matrimonio se conformase a las normas del régimen de sociedad de bienes gananciales.[3]

---

[1] Don Jorge falleció en el año 1989.

[2] Posteriormente, en las deposiciones que les tomaron los demandados, el ingeniero Pardo y su esposa admitieron que desde el año 1959 sabían del divorcio de doña Isabel y de don Jorge y que asistieron al segundo matrimonio de éstos en el año 1961.

[3] Los demandantes presentaron en su demanda otras alegaciones y solicitaron otros remedios relacionados a los testamentos de doña Isabel y de don Jorge, al caudal hereditario de ambos y a la cuota viudal usufructuaria de doña Isabel. No es necesario discutir dichos aspectos de la demanda para la revisión de la sentencia del Tribunal de Circuito de Apelaciones.

A esos efectos y después de que los codemandados presentaron sus contestaciones a la demanda, el 5 de octubre de 1993, los demandantes solicitaron al tribunal que dictase sentencia sumaria parcial.[4] Los codemandados, Jorge Stella Royo, Jorge Luis Stella Arroyo y Adrián Stella Arroyo, el 23 de diciembre de 1993, presentaron su oposición a la moción de sentencia sumaria y, a la vez, formularon su propia solicitud de sentencia sumaria, a la que se opusieron los demandantes.[5]

Básicamente, tanto los demandantes como los codemandados estaban de acuerdo en los hechos materiales a la controversia de autos: (1) doña Isabel contrajo matrimonio con don Angel Pardo Torres y procrearon un hijo, el demandante Angelo Pardo Santos; (2) tras el divorcio de doña Isabel de su primer esposo, ésta contrajo matrimonio con don Jorge, el 13 de marzo de 1938, y la pareja procreó un hijo, el codemandado Jorge Stella Santos; (3) el 13 de noviembre de 1959, doña Isabel presentó una demanda de divorcio por la causal de abandono y el 18 de diciembre de ese mismo año se dictó sentencia de divorcio en rebeldía; (4) el 21 de diciembre de 1959 doña Isabel y don Jorge presentaron una estipulación sobre división de bienes gananciales; (5) el 27 de enero de 1961 doña Isabel y don Jorge otorgaron capitulaciones matrimoniales; (6) el 30 de

---

[4] La moción de sentencia sumaria parcial fue acompañada por la declaración jurada del ingeniero Pardo Santos, las copias del certificado de matrimonio de don Jorge y doña Isabel celebrado en 1938, de la notificación y de la sentencia del divorcio de ambos, de la estipulación sobre la división de bienes gananciales y la sentencia supletoria aprobando dicha estipulación, de las mociones y demás documentación del expediente del caso de divorcio de don Jorge y de doña Isabel, de las capitulaciones matrimoniales otorgadas por la pareja antes de su segundo matrimonio, y del certificado de ese matrimonio. También se incluyeron copias de fotografías de diversos eventos familiares en los que aparecían don Jorge y doña Isabel, como evidencia de que nunca se configuró la causal de abandono para el divorcio de la pareja. Entre éstas se incluyeron copia de fotos de la boda del ingeniero Pardo Santos con la codemandante, Emma León, celebrado en diciembre de 1958, y del bautizo del hijo de éstos, celebrado el 27 de diciembre de 1959.

[5] Los codemandados acompañaron su moción en oposición a la sentencia sumaria parcial con un escrito sobre su versión de los hechos relativos al divorcio y posterior matrimonio entre doña Isabel y don Jorge, pasajes de las transcripciones de las deposiciones tomadas al ingeniero Pardo Santos y a su esposa, Emma León de Pardo, y sus contestaciones a interrogatorios, declaraciones juradas de amigos y familiares de don Jorge y doña Isabel sobre los hechos en cuestión, copias de diversas cartas, escrituras y otros documentos en apoyo de sus alegaciones.

enero de 1961 doña Isabel y don Jorge contrajeron matrimonio por segunda vez.

Sin embargo, los demandantes alegaron que doña Isabel y don Jorge nunca se separaron, con excepción de un período de vacaciones en las cuales doña Isabel se quedó con su hermano en el estado de Florida, hecho ocurrido con posterioridad al divorcio, y que don Jorge y doña Isabel participaron juntos en ciertas actividades familiares, entre ellas, la boda de los demandantes, la celebración del Día de Reyes del año 1959, las visitas a la residencia de los demandantes, la cena de Acción de Gracias del año 1959, la visita al hospital el día en que nació el hijo de los demandantes en diciembre de 1959, y un viaje realizado por don Jorge y doña Isabel en octubre de 1958.

Dicha alegación fue rebatida por los codemandados en su moción en oposición a la sentencia sumaria. Argumentaron que: (1) los documentos presentados por los demandantes en la moción de sentencia sumaria no demostraban mediante hechos incontrovertidos de que hubo un fraude contra el tribunal en la acción de divorcio entre don Jorge y doña Isabel; (2) los demandantes conocían del divorcio, de las subsiguientes capitulaciones matrimoniales y del segundo matrimonio entre doña Isabel y don Jorge, desde el mismo momento en que ocurrieron los hechos; (3) la incuria extrema de los demandantes impedía que se considerase el reclamo; (4) los más de 30 años transcurridos desde que se dictó la sentencia de divorcio entre doña Isabel y don Jorge, perjudicaba el derecho de los codemandados a presentar prueba para derrotar las alegaciones esbozadas por los demandantes.

Así las cosas, el 27 de enero de 1995, el Tribunal de Primera Instancia (Hon. Flavio Cumpiano) emitió una sentencia sumaria parcial declarando sin lugar la reclamación de los demandantes. No conformes, los demandantes acudieron al Tribunal de Circuito de Apelaciones, el cual emitió una sentencia revocando al Tribunal de Primera Instancia. Según entendió el tribunal intermedio no procedía el uso del mecanismo sumario, provisto por la Regla 36 de las Reglas de Procedimiento Civil de 1979, 32

L.P.R.A. Ap. III R. 36, sin haber escuchado prueba en un caso en el cual existía una clara controversia de hechos y donde el factor credibilidad estaba envuelto.[6]

Ante el dictamen del foro apelativo, los codemandados acudieron ante nos. Vista la solicitud, memorando y documentos anejos, le ordenamos a los demandantes-apelados mostrar causa, si la hubiere, por la cual no debíamos expedir el auto solicitado y revocar la sentencia del Tribunal de Circuito de Apelaciones en vista de las alegaciones en la página cuatro de la demanda, al efecto de que fue la causante del demandante quien presentó la acción de divorcio --doctrina de los actos propios-- y de lo dispuesto en el inciso 3 de la Regla 49.2 de las Reglas de Procedimiento Civil, 32 L.P.R.A. Ap. III R. 49.2.

En cumplimiento de nuestra orden, la parte demandante presentó un escrito en el cual alegó que el presente caso no había sido presentado bajo las disposiciones de la Regla 49.(3) de las Reglas de Procedimiento Civil, sino bajo el segundo párrafo de la Regla 49.2, sobre acciones independientes con motivo de fraude al tribunal, y que en nuestra jurisdicción un heredero puede impugnar acciones de su causante.

Examinado el escrito solicitado, así como todos los documentos incluidos en el apéndice de la solicitud de los codemandados, estamos listos para emitir una determinación.

II.

El relevo de una sentencia de divorcio sólo procede cuando se alegue y pruebe fraude al tribunal o nulidad de sentencia, utilizando el mecanismo provisto por la Regla 49.2 de las Reglas de Procedimiento Civil, 32 L.P.R.A. Ap.III R. 49.2. José A. Pacheco v. Eastern Med.

---

[6] Los codemandados solicitaron la reconsideración del dictamen por estimar que era contrario a lo resuelto por este Tribunal en Sucn. Pacheco Otero, etc. v. Eastern Med. Assoc., Inc., Op. de 6 de abril de 1994, 135 D.P.R. ___, 94 J.T.S. 49. Pero, el foro apelativo se reiteró en que no se podía disponer de la reclamación sumariamente, en vista de que el presente era un caso donde habían elementos subjetivos de intención, propósitos mentales o negligencia y en el cual el factor credibilidad era esencial.

Assoc., Inc., Op. de 6 de abril de 1994, 135 D.P.R. _____, 94 J.T.S. 49, pág. 11773; Hernández v. Zapater, 82 D.P.R. 777 (1961).

Mediante dicha regla, el tribunal puede relevar o modificar los efectos de una sentencia, una resolución o una orden. R. Hernández Colón, Derecho Procesal Civil, San Juan, Michie, 1997, §§ 4801-4803. En el caso de fraude entre las partes, la moción de relevo debe ser presentada dentro del término de seis meses. Si se alega fraude al tribunal, se puede presentar un pleito independiente, en cuyo caso el término de seis meses que provee la regla para presentar una moción de relevo no es aplicable. Municipio de Coamo v. Tribunal Superior, 99 D.P.R. 932, 938 (1971); Calderón v. Federal Land Bank, 89 D.P.R. 704 (1963); Martínez v. Tribunal Superior, 83 D.P.R. 358, 360 (1961).

Ahora bien, una acción independiente de nulidad de sentencia basada en fraude al tribunal, sólo incluye actuaciones cuyo efecto o intención sea mancillar al tribunal como tal, o que es perpetuado por oficiales del tribunal, de tal forma que la maquinaria judicial no pueda ejercer como de costumbre su imparcial labor de juzgar los casos que se le presentan para adjudicación. Municipio de Coamo v. Tribunal Superior, supra, pág. 939. Las alegaciones falsas que se hayan incluido en una demanda per se no constituyen fundamentos para concluir que hubo fraude al tribunal. Rodríguez v. Tribunal Superior, 102 D.P.R. 290, 292 (1974).

Una acción sobre fraude al tribunal tiene que exponer detalladamente las circunstancias que constituyen el mismo. El sólo hecho de alegar que hubo fraude no constituye una de las circunstancias que a tenor con la Regla 49.2 permiten el relevo de una sentencia. Correa v. Marcano, Op. de 12 de marzo de 1996, 139 D.P.R. _____, 96 J.T.S. 1, pág. 542; Dávila v. Hosp. San Miguel, Inc., 117 D.P.R. 807 (1986). Figueroa v. Banco de San Juan, 108 D.P.R. 680 (1979). El fraude nunca se presume. Esto significa que debe ser probado por la parte promovente con certeza razonable, esto es, con preponderancia de la evidencia que satisfaga la conciencia del juzgador. González Cruz v. Quintana Cortés, CC-97-240 (en circulación); De Jesús Díaz v. Carrero, 112 D.P.R. 631 (1982); Canales v.

Pan American, 112 D.P.R. 329 (1982); García López v. Méndez García, 102 D.P.R. 383 (1974; Carrasquillo v. Lippitt & Simonpietri, Inc., 98 D.P.R. 659 (1970).

Por otra parte, hemos establecido que cuando un tribunal examina una solicitud de relevo de sentencia, bajo la Regla 49.2 de las Reglas de Procedimiento Civil, tiene que considerar ciertos criterios para salvaguardar los derechos de las partes envueltas en el litigio. El juez de instancia deberá estar atento a la existencia de una defensa válida que oponer a la reclamación del peticionario, el tiempo que media entre la sentencia y la solicitud de relevo, el perjuicio que sufriría la parte contraria si se concede el relevo de sentencia, el perjuicio que sufriría la parte promovente de no ser concedido el remedio solicitado. Neptune Packing Corp. v. Wackenhut Corp., 120 D.P.R. 283, 294 (1988); Murphy Lugo v. Atlantic Southern Insurance, Co., 91 D.P.R. 335 (1964).

Una acción independiente sobre fraude al tribunal sólo debe ser presentada en aquellos casos en que ha transcurrido el término fatal de seis meses y las circunstancias son tales que el tribunal puede razonablemente concluir que mantener la sentencia constituiría una grave injusticia contra la parte que no ha sido negligente en el trámite de su caso y que, además, tiene una buena defensa en los méritos. Figueroa v. Banco de San Juan, supra, pág. 688.

Aunque la Regla 49.2 de las Reglas de Procedimiento Civil, 32 L.P.R.A. Ap. III R. 49.2, debe ser interpretada de forma liberal, el interés de que los pleitos se vean en los méritos no puede bajo toda circunstancia prevalecer sobre los intereses igualmente justos, de evitar la congestión en los calendarios, de que los casos se resuelvan con prontitud, se termine la incertidumbre, se eviten las demoras innecesarias en el trámite judicial, promoviendo la solución justa, rápida y económica de las controversias. Correa v. Marcano, supra, pág. 542; Dávila v. Hosp. San Miguel, Inc., supra, pág. 818 (1986).

Por otra parte, la Regla 36 de las Reglas de Procedimiento Civil, 32 L.P.R.A. Ap. III R. 36, provee un mecanismo sumario para aligerar la

tramitación de un caso, permitiendo que se dicte sentencia sin necesidad de que se tenga que celebrar una vista en los méritos, cuando de la evidencia no controvertida surge que no existe disputa de hechos sustanciales a ser dirimida y que sólo resta aplicar el derecho. McCrillis v. Autoridad de Navieras, et al., 123 D.P.R. 113 (1989); Tello v. American Airlines, Inc., 119 D.P.R. 83 (1987); Roth v. Lugo, 87 D.P.R. 386 (1963).

Se pretende agilizar los procedimientos, proporcionando una resolución justa, rápida y económica de un litigio, aplicando el derecho a hechos incontrovertidos. Pilot Life Ins. Co. v. Crespo Martínez, Op. de 13 de julio de 1994, 136 D.P.R. ____, 94 J.T.S. 104, págs. 20-21; P.F.Z. Props., Inc. v. Gen. Acc. Ins. Co., Op. de 7 de septiembre de 1994, 136 D.P.R. ___, 94 J.T.S. 116, pág. 125; Caquías v. Asoc. Res. Mansiones de Río Piedras, Op. de 25 de agosto de 1993, 134 D.P.R. ___, 93 J.T.S. 127, pág. 11079.

Para derrotar una moción de sentencia sumaria, la parte promovida deberá presentar declaraciones juradas y documentos que pongan en controversia los hechos presentados por el promovente. P.F.Z. Props., Inc. v. Gen. Acc. Ins. Co., supra, pág. 125.

La sentencia sumaria podrá ser dictada, a favor o en contra de cualquier parte en el pleito, si de las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas, si las hubiere, demostraren que no hay controversia real sustancial en cuanto a ningún hecho y lo que resta es aplicar el derecho. Regla 36.3 de las Reglas de Procedimiento Civil; P.F.Z. Props., Inc. v. Gen. Acc. Ins. Co., supra, pág. 124.

Atentos a las normas de derecho esbozadas, pasamos a examinar los hechos particulares del caso ante nos.

III.

Después de revisar cuidadosamente las alegaciones de la demanda, la moción solicitando sentencia sumaria, la moción en oposición a la

sentencia sumaria y los documentos que acompañan dichos escritos, que incluyen copia del expediente del caso de divorcio de doña Isabel y de don Jorge, no encontramos irregularidades, detalles o circunstancias que nos hagan concluir que debamos relevar los efectos de una sentencia de divorcio de 1959, trastocando relaciones jurídicas que datan de hace más de treinta años.

Por una parte, el tribunal de primera instancia tenía jurisdicción para entender en la demanda de divorcio y liquidación de la sociedad de bienes gananciales de don Jorge y doña Isabel.  La demanda, **presentada por doña Isabel**, fue debidamente notificada a don Jorge. Contrario al caso de Hernández v. Zapater, supra, no surge del expediente del caso ante nos que las partes interesadas en el divorcio estuvieran indefensas o enajenadas del procedimiento.[7]

Tampoco surge del expediente del caso de divorcio que no se siguiera un trámite judicial honrado y equitativo.  El tribunal celebró el requerido acto de conciliación, al cual asistió don Jorge. Cómo éste no formuló alegación responsiva, **a solicitud de doña Isabel le fue anotada la rebeldía.**  Luego, durante la vista del caso de divorcio, celebrada el 18 diciembre de 1959, el Juez Antonio R. Barceló escuchó y aquilató la prueba presentada ante él.  Así dictó sentencia señalando que "[p]or los hechos que constan de **la prueba ofrecida por la demandante**"[8] procedía el divorcio por la causal de abandono.  Finalmente, el 30 de diciembre, don Jorge y doña Isabel suscribieron una estipulación para la liquidación de la sociedad de bienes gananciales.[9]

Por otra parte, como señalamos anteriormente, **fue doña Isabel quien inició el procedimiento de divorcio** por la causal de abandono.  O sea, la

---

[7]  En Hernández v. Zapater, supra, resolvimos que el proceso de divorcio del que se solicitaba la anulación no fue uno justo por causa de la indefensión de la esposa demandada.  A pesar de su estado mental, no se le notificó de la demanda de divorcio mediante un tutor; no se le nombró un defensor ad litem y no se le indicó al tribunal que habían bienes gananciales que dividir.

[8]  Énfasis suplido.

[9]  La misma fue aprobada el 8 de febrero de 1961.

parte demandante solicita que se anule una sentencia, alegando lo que constituiría el fraude de su propio causante. No podemos acceder a tal requerimiento.

Primero, meras alegaciones de que doña Isabel y don Jorge nunca se separaron no constituyen per se fraude al tribunal en el contexto de la Regla 49.2(3) de las Reglas de Procedimiento Civil.[10] El fraude al tribunal, bajo dicha regla, se refiere a casos poco usuales que envuelven más allá de un daño a un litigante en particular. Los tribunales han rechazado invocar este concepto en casos en los cuales la alegada actuación fraudulenta, de haber existido, se dio entre las partes del caso y no tuvo un efecto directo en la integridad del proceso judicial. Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 2870. En Municipio de Coamo v. Tribunal Superior, supra, pág. 939-940, señalamos que fraude al tribunal debe cubrir sólo aquellos tipos de fraude cuya intención sea mancillar al tribunal como tal, por ejemplo, el perpetrado por oficiales del tribunal, la preparación, el uso y la presentación en la vista del caso de prueba falsa obtenida por la parte adversa por medio del soborno y la instigación al perjurio, o que nunca se emplazó debidamente a la parte contra la cual se dictó la sentencia.

Segundo, la conducta contradictoria no tiene lugar en el campo del derecho, y debe ser impedida. Int. General Electric v. Concrete Builders, 104 D.P.R. 871, 877 (1976). Así, en el sentido de la Regla 49.2(3) de las Reglas de Procedimiento Civil, una parte que ha participado en el alegado fraude al tribunal no puede levantar una acción solicitando la nulidad de una sentencia. Véase: Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d §§ 2860 y 2868.

El principio de derecho de que a nadie le está permitido ir contra sus propios actos tiene su fundamento en el cuadro general de situaciones jurídicas cuya firmeza descansa en la protección concedida a la confianza

---

[10] No podemos enajenarnos del hecho de que antes del caso de Figueroa Ferrer v. E.L.A., 107 D.P.R. 250 (1978), muchos ciudadanos en Puerto Rico, en medio de "un doloroso dilema", eran protagonistas de una situación que hacía inevitable la brecha entre derecho y realidad, existiendo de facto el divorcio por consentimiento mutuo.

en la apariencia. J. Puig Brutau, _Estudios de Derecho Comparado_, Barcelona, Ediciones Ariel, 1951, pág. 115. Lo que se veda es que un litigante adopte una actitud que le ponga en contradicción con su anterior conducta. L. Díez Picazo, _La doctrina de los propios actos_, Barcelona, Bosh, 1963, pág. 109.

En la doctrina de no ir contra los propios actos el efecto se produce de un modo objetivo, en el cual para nada cuenta la verdadera voluntad del autor de los actos. Se protege así la confianza que esos actos susciten en un tercero porque venir contra ellos constituiría un ataque a la buena fe. _Int. General Electric_ v. _Concrete Builders_, _supra_, pág. 876.

La aplicación de la norma jurídica que sanciona la inadmisibilidad de la pretensión contradictoria se extiende a la sucesión. No es lícito desconocer la eficacia de los actos realizados por un causante; esto iría en contra de una exigencia social de continuidad de la vida jurídica. L. Díez Picazo, _La doctrina de los propios actos_, _supra_, pág. 232-234.

En el escrito presentado en cumplimiento a nuestra orden de mostrar causa, la parte demandante alegó que este tribunal ha permitido que un heredero acuda a los tribunales a impugnar acciones de su causante, citando el caso de _González Rodríguez_ v. _Fumero_, 38 D.P.R. 556 (1928). No podemos acoger su planteamiento.

En _González Rodríguez_ v. _Fumero_ se realizó un contrato de compraventa simulado, inexistente, en perjuicio de unos herederos. Dicho contrato nunca tuvo eficacia jurídica. En este caso la causante del demandante, **muchos años antes de su muerte y en pleno ejercicio de sus facultades mentales**, decidió divorciarse y liquidar una sociedad de bienes gananciales. Posteriormente, cuando decidió volver a contraer matrimonio, suscribió unas capitulaciones matrimoniales para mantener una total separación de bienes. Entre doña Isabel y don Jorge, distinto al caso de _Hernández_ v. _Zapater_, _supra_, en el que no hubo una división de bienes gananciales en perjuicio de la esposa demandada, no quedaron

bienes pendientes de división.[11]  Este no es un caso donde un heredero defienda intereses propietarios de su causante.

Tercero, la parte demandante admitió que sabía que doña Isabel y don Jorge se habían divorciado en el año 1959 y hasta asistieron a la celebración del segundo matrimonio de éstos, en el año 1961. Siendo mayores de edad y casados entre sí, el ingeniero Pardo Santos y Emma León de Pardo, fueron partícipes y testigos de los hechos que ocurrieron en la vida de doña Isabel casi cuatro décadas atrás.  La norma de que nadie puede ir contra sus propios actos impide que se ejercite tardíamente un derecho, en forma contradictoria con una situación que tácitamente se ha admitido. L. Díez Picazo, La doctrina de los propios actos, supra, pág. 123.  Aunque no existe un límite de tiempo específico para presentar una acción independiente por fraude al tribunal, la doctrina de incuria es de aplicación. Véase Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 2868.

Por último, la presente acción y solicitud de nulidad de sentencia de divorcio fue presentada **después de la muerte de doña Isabel y de don Jorge.** El estado civil es un atributo fundamental de la persona.  La mayoría de los cambios de estado civil se producen a iniciativa del propio interesado, observando los requisitos y formalidades establecidas por la ley.  Una persona puede cambiar, dentro de los límites establecidos por la ley, su propio estado civil, pero no el de los demás. J. Puig Brutau, Fundamentos de Derecho Civil, Barcelona, Bosch, 1979, T.I, Vol. I, págs. 307-308.  En Sucn. José A. Pacheco v. Eastern Med. Assoc., Inc., Op. de 6 de abril de 1994, 94 J.T.S. 49, pág. 11773, explicamos que un tribunal no puede intervenir con el estado civil de un fallecido debido a que la acción de divorcio se extingue con la muerte del titular. Véase, además, Hernández v. Zapater, supra.

---

[11]  El tribunal, en Hernández v. Zapater, supra, no tenía conocimiento de la existencia de bienes gananciales.  Además, a la fecha en que la esposa demandada le otorgó un poder a su entonces esposo, con el cual éste dispuso de los bienes gananciales del matrimonio, ella padecía de sus facultades mentales.

Por todo lo antes dicho, en el caso de autos no era necesario adentrarse en áreas eminentemente personales, como lo son el matrimonio y el divorcio, en las que el ser humano tiene derecho a la menor intervención posible de parte del Estado y en las cuales sólo debemos irrumpir cuando el interés general así lo justifique con claridad. Véase Rosario v. Galarza, 83 D.P.R. 167, 174 (1961). Más aún, cuando la mayoría de las personas que tenían conocimiento personal de las circunstancias que rodearon el divorcio de doña Isabel y don Jorge han fallecido, incluyendo los propios protagonistas del divorcio; las notas taquigráficas de los procedimientos del tribunal no están disponibles y la gran cantidad de años que han transcurrido hace imposible recopilar prueba indispensable para probar un alegado fraude o para defenderse de tal alegación.[12]

No estamos de acuerdo con el Tribunal de Circuito de Apelaciones de que los hechos de este caso requieran dirimir cuestiones subjetivas o de credibilidad, por lo que no se pueda utilizar el mecanismo de sentencia sumaria. Casto Soto v. Hotel Caribe Hilton, Op. de 14 de octubre de 1994, 94 J.T.S. 128, pág. 311. Dado el análisis de los hechos a la luz del derecho aplicable, el Tribunal de Instancia no tiene que celebrar una vista para pasar prueba sobre la alegación de la inexistencia de abandono como causal del divorcio habido entre doña Isabel Santos Nazario y don Jorge Stella Royo.

---

[12] Aunque no es necesario celebrar una vista sobre la inexistencia del abandono como causal de divorcio, hacemos constar que las alegaciones de la parte demandante parecen descansar en conjeturas y no en evidencia clara, robusta y convincente. Lo cierto es que el hecho de que durante el tiempo de abandono el marido cumpla con sus deberes civiles para con la esposa, no impide la acción de abandono para con ella. Cabrer v. Pietri, 67 D.P.R. 437 (1947); Catinchi v. Catinchi, 27 D.P.R. 418 (1947). Por su parte, los codemandantes presentaron documentos y declaraciones juradas que establecen que don Jorge y doña Isabel deseaban divorciarse. Según se desprende de algunas de las declaraciones juradas que revisamos, podría especularse que don Jorge abandonó a doña Isabel por un alegado hábito de juego. Sin embargo, no podemos basar una decisión de nulidad de sentencia de divorcio en meras especulaciones, cuando lo único que está claro es el deseo de la pareja de divorciarse. Recordemos que en Figueroa Ferrer v. E.L.A., supra, establecimos que en ausencia de intereses públicos apremiantes el Estado no puede violar la zona de intimidad protegida por el Art. II, Sec. 8 de la Constitución del Estado Libre Asociado.

Por los fundamentos antes expuestos, se dictará sentencia revocando la sentencia emitida por el Tribunal de Circuito de Apelaciones y confirmando la sentencia del Tribunal de Primera Instancia.


José A. Andréu García
Juez Presidente

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Angelo Pardo Santos y otros

    Demandantes-Apelados

      v.

Sucn. de Jorge Stella Royo         AC-96-51     Apelación

    Demandados-Apelantes

Antonio Cordoves Infante
En su carácter personal
Como Albacea de la Sucn.

    Demandado-Apelado


SENTENCIA


San Juan, Puerto Rico, a 17 de junio de 1998

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte integrante de la presente, se dicta sentencia revocando aquella emitida por el Tribunal de Circuito de Apelaciones y se confirma la dictada por el Tribunal de Primera Instancia, Sala Superior de San Juan.

Lo pronunció y manda el Tribunal y certifica la Secretaria del Tribunal. El Juez Asociado señor Fuster Berlingeri concurre en el resultado sin opinión escrita. El Juez Asociado señor Negrón García inhibido. El Juez Asociado señor Rebollo López no interviene.


Isabel Llompart Zeno
Secretaria Tribunal Supremo